**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**ALLEN PAUL KOLEHMAINEN** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 3:26-CV-316-JHM**

**JEFFERSONTOWN FIRE PROTECTION DISTRICT, *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Allen Paul Kolehmainen, proceeding *pro se*, commenced the instant civil action. Because Plaintiff is proceeding *in forma pauperis*, the Court must undertake a preliminary review of the second amended complaint. (DN 18). *See* 28 U.S.C. § 1915(e); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). For the following reasons, the Court will allow some claims to proceed and dismiss the remaining claims.

## I. STATEMENT OF CLAIMS

In the second amended complaint,[1] Plaintiff names the following ten Defendants: the Jeffersontown Fire Protection District (JFPD), the City of Jeffersontown, Kentucky, and the Jeffersontown Police Department (JPD) (collectively, the Jeffersontown Defendants); JFPD Emergency Medical Technician (EMT) Christopher Schumacher, EMT Terri'ana Harris, Paramedic Bruce Wardrip/John Doe #1, Firefighter John Doe #2, JPD Officer Waters, JPD Officer Poston, and JPD Officer E. Wescott (collectively, the First Responder Defendants). Plaintiff sues the First Responder Defendants in their individual and official capacities. He brings this action

[1] Because "[a]n amended complaint supersedes an earlier complaint for all purposes," *In re Refrigerant Compressors Antitrust Litig*., 731 F.3d 586, 589 (6th Cir. 2013), the amended complaint supersedes, or replaces, the original complaint.

pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act.

The events detailed in the second amended complaint stem from a motor vehicle accident involving Plaintiff and another driver on May 5, 2023, between 4:15 p.m. and 5:05 p.m., in Jeffersontown, Kentucky. The head-on collision caused the airbags to deploy in both vehicles. JFPD Emergency Medical Service (EMS) responded to the scene, as did on-duty JPD Officers Waters and Poston, and off-duty JPD Officer E. Wescott. (DN 18, PageID.303).

Plaintiff alleges that at approximately 4:15 p.m., Defendant Waters asked Plaintiff, "What happened today?" Plaintiff answered, "Umm, my memory is little foggy." A few moments later, Plaintiff asked Waters, "What did you ask me for again?" while rubbing his neck with his right hand. Plaintiff represents that during the encounter he was walking "with a visibly abnormal gait, misstepping on his right leg." Defendant Wardrip then asked Plaintiff, "Sir, you want us to check you out or anything?" Plaintiff pointed to his upper right side and replied, "my neck hurts, my shoulder hurts this whole upper area." Wardrip said to Plaintiff, "Yeah you['re] going to feel that tomorrow," and walked away without any further assessment of Plaintiff's condition. (*Id.*, PageID.304).

Plaintiff next alleges that at 4:21 p.m., Defendant Poston told an approaching Advanced EMT (referred to in the second amended complaint as "the AEMT")[2] that Plaintiff had complained that "the top of his head hurts." However, "[t]hat verbal report of a head-injury complaint by [Poston] to [the AEMT] does not appear anywhere in the JFPD patient care report."[3] (*Id.*).

[2] The AEMT is not a party to this action.

[3] Beginning at paragraph 23 of the second amended complaint, Plaintiff refers to the JFPD's electronic patient care report as the "ePCR." (DN 18, PageID.305). The Court will refer to the same herein.

Upon questioning, Plaintiff told the AEMT that during the accident he was wearing his seatbelt, he did not lose consciousness, and he had no memory of hitting his head. The AEMT asked Plaintiff, "Want us to check you out?" and proceeded to prepare a refusal-of-transport form. According to Plaintiff, "[t]he AEMT did not inform Wardrip . . . or the EMT crew that Plaintiff had reported a head injury, and did not inform them that Officer Poston had already relayed to the AEMT that Plaintiff was 'complaining the top of his head hurts.'" (*Id.*, PageID.304-05).

Plaintiff alleges that body-worn camera footage shows that Defendant Schumacher made "hands on contact" with Plaintiff.[4] He states that the ePCR reflects "GCS Not Assessed," "Neurological: normal baseline for patient," and "Disposition = Patient Treated." He continues, "[t]he ePCR documents no blood pressure reading and no other vital signs for Plaintiff," and "[n]o treatment is documented anywhere in the ePCR." (*Id.*, PageID.305).

Plaintiff appears to allege that Poston and Waters are heard on a recording, presumably the body camera footage, discussing Plaintiff: "he's kinda out of it, either that or I don't think he's that smart," (Poston) and "I think he has a concussion" (Waters). (*Id.*).

Plaintiff states that at 4:29 p.m., he signed a refusal-of-transport form that he returned to Schumacher. He explains that Schumacher accepted the signed form "without completing the Glasgow Coma Scale assessment, without documenting a capacity determination, without contacting a medical director for authorization, and without applying spinal motion restriction." Plaintiff further alleges that the timestamp of the refusal form preceded Schumacher's contact with Plaintiff by three minutes. He states that "Defendant Harris did not interact with Plaintiff on scene." (*Id.*, PageID.306).

---

[4] Plaintiff does not elaborate on the nature of that contact.

Next, Plaintiff alleges that Poston asked him whether he was doing better and if he had his head "checked out," to which Plaintiff responded, "I have to watch for deterioration of mental capacities over time I guess . . . it feels like my head is bleeding or something . . . other than that I'm fine, neck hurts pretty bad." He claims that despite his complaints of head injury and neck pain, "no re-assessment occurred." (*Id.*).

Plaintiff further maintains that Wardrip "did not reassess Plaintiff after Plaintiff verbalized his complaints of head and neck injuries," nor did he "intervene" when the AEMT populated the refusal-of-transport form. (*Id.*, PageID.307).

Plaintiff alleges that the body-worn camera footage reveals that he also reported his head injury to Defendant John Doe #2, a JFPD First Responder, but the report of the injury "does not appear anywhere" in the ePCR. (*Id.*).

Plaintiff claims that Waters and Poston "did not secure medical transport for Plaintiff" despite reporting head and neck injuries to them, and that they "departed the scene without ensuring that Plaintiff received medical evaluation or transport to a hospital." (*Id.*, PageID.308). He also alleges that Defendant E. Wescott "was present on scene during the exchanges described [above] and did not summon or secure medical transport for Plaintiff." (*Id.*).

According to the second amended complaint, Schumacher, Harris, the non-party AEMT, Wardrip/John Doe #1 and John Doe #2 were employed by the JFPD. In this regard, Plaintiff claims that the JFPD did properly not train its EMS personnel to: (1) complete Glasgow Coma Scale assessments before accepting refusals of transport from patients involved in high-mechanism motor vehicle accidents; (2) accommodate patients with apparent cognitive impairment before accepting refusals of transport; (3) reassess a patient after another responding agency has voiced clinical concern about that patient's condition on scene; or (4) complete a co-signature on a patient

care report only after personal assessment of the patient. Plaintiff further alleges that JFPD "took no corrective or disciplinary action" against any of the above employees. (*Id.*, PageID.308-09).

Plaintiff also alleges that the City of Jeffersontown, by its operation of the JPD, "did not train its officers to reconcile the on-duty officers' contemporaneous in-person observations of injury with the dispatch classification of the call," or "train its officers to secure medical transport for accident victims verbalizing head and neck injury after EMS on scene declined to transport." (*Id.*, PageID.309).

Plaintiff alleges that "[n]one of the injury reports, third-party relayed reports, on-scene officer observations, or post-refusal injury statements" appear in the ePCR prepared by Shumacher. (*Id.*, PageID.310).

Plaintiff reiterates that he was left at the scene without medical evaluation, without transport to a medical facility, and without accurate documentation of his injuries. He goes to explain that he was seen at the Norton Hospital Emergency Room 44 hours later, where it was noted that Plaintiff "did not remember getting out of the vehicle after the accident, did not remember speaking to paramedics, and did not remember speaking to police." (*Id.*).

Over two years later, Plaintiff was formally diagnosed with a traumatic brain injury (TBI) on October 15, 2025. Prior to his diagnosis, Plaintiff states that he experienced cognitive impairment, memory loss, elevated blood pressure, and a progressive cervical spine injury "without diagnosis or treatment." (*Id.*). He maintains that "[b]etween May 5, 2023 and October 15, 2025, Plaintiff experienced continuous cognitive symptoms without formal traumatic brain injury diagnosis." (*Id.*, PageID.311). As a result of the events described in the second amended complaint, Plaintiff states that he "was compelled to vacate his Kentucky residence and relocate to Michigan as a result of the cognitive and physical impairments," "lost the capacity to

maintain prior custodial responsibilities for a minor child," and "continues to experience cognitive impairment, memory deficits, cervical-spine pain, and reduced earning capacity." (*Id.*).

Plaintiff avers that his claims arise under the "Fourteenth Amendment to the United States Constitution – deliberate indifference to serious medical need, substantive due process (bodily integrity), and the Equal Protection Clause; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794."[5] (*Id.*, PageID.310).

As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief requiring the JFPD and the City "to adopt written policies and training on Glasgow Coma Scale assessment, capacity determination, and disability accommodation before accepting refusals of transport from motor-vehicle-accident patients." (*Id.*, PageID.312).

## II. STANDARD

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the complaint under 28 U.S.C. § 1915(e). *McGore*, 114 F.3d at 608–09, *overruled on other grounds by Jones*, 594 U.S. 199. On review, a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*,

[5] Although the second amended complaint purports to invoke "[s]upplemental jurisdiction over any related Kentucky state-law claims . . . under 28 U.S.C. § 1367," it does not elsewhere reference or identify any state law causes of action.

518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III. ANALYSIS

### *A. Section 1983 Claims*

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

1. Bodily Integrity

The Fourteenth Amendment's substantive due process protections have "been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (citations omitted). The right to bodily integrity is "an indispensable right recognized at common law as the 'right to be free from . . . unjustified intrusions on personal security' and 'encompass[ing] freedom from bodily restraint and punishment.'" *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977), and citing *Davis v. Hubbard*, 506 F.Supp. 915, 930 (N.D. Ohio 1980)). Within the Sixth Circuit, courts have typically addressed the right to bodily integrity in the context of nonconsensual or forcible physical intrusions. *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 506 (6th Cir. 2012) ("Under the substantive due process clause of the Fourteenth Amendment, individuals possess a constitutional right to be free from forcible physical intrusions of their bodies against their will, absent a compelling state interest."); *see also, e.g.*, *Guertin*, 912 F.3d at 922-35 (intentional introduction of lead into city's drinking water); *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.,* 103 F.3d 495, 506 (6th Cir. 1996) (sexual abuse by public school teacher); *United States v. Morris*, 494 F. App'x 574, 580–81 (6th Cir. 2012) (sexual assault by deputy during the course of traffic stop); *In re Cincinnati Radiation Litig.,* 874 F. Supp. 796, 814 (S.D. Ohio 1995) (forced medical experimentation). Courts employ "the 'shocks the conscience' rubric to evaluate intrusions into a person's right to

bodily integrity." *Guertin,* 912 F.3d at 922 (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996)). Conscious-shocking behavior is "egregious," and requires more than "mere negligence" to give rise to a substantive due process claim. *Id.* at 923 (citations omitted).

Plaintiff does not describe how the Defendants' actions constitute a violation of his due process right to bodily integrity, and the second amended complaint is devoid of allegations stating a "nonconsensual intrusion[ ] into one's body." *Planned Parenthood Sw. Ohio Region v. Dewine*, No. 1:04-cv-493, 2011 WL 9158009, at *13 (S.D. Ohio May 23, 2011); *see also, e.g.*, *Pirozak v. Knight*, No. 2:19-CV-499, 2020 WL 1290244, at *11 (S.D. Ohio Mar. 18, 2020) (dismissing bodily-integrity claim that deputy-defendant pushed plaintiff down and took her cell phone where, *inter alia*, "there was no intrusion into her body"). Nor does he allege actions taken by the First Responder Defendants that shock the conscience. *Guertin*, 912 F.3d at 922 ("[T]he shocks-the-conscience test is the way in which courts prevent transforming run-of-the-mill tort claims into violations of constitutional guarantees."); *see also Bell v. Meadows*, No. 5:25-CV-420-REW-MAS, 2026 WL 2643899, at *10 (E.D. Ky. Aug. 28, 2026) ("Dismissal is . . . appropriate when a plaintiff fails to plead facts that suggest conscience-shocking behavior.").

Accordingly, Plaintiff's substantive due process claim under the Fourteenth Amendment will be dismissed for failure to state a claim upon which relief may be granted.

2. Equal Protection

"To state an equal protection claim, a plaintiff must 'adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Bellant v. Snyder*, 338 F. Supp. 3d 651, 658 (E.D. Mich. 2018) (quoting *Ctr. for Bio-Ethical*

*Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)) (internal quotation marks and citation omitted).

Plaintiff fails to set forth facts to support this claim—significantly, whether he is a member of a suspect class, *see S.S. v. E. Kentucky Univ*., 532 F.3d 445, 457 (6th Cir. 2008) (disabled persons are not a suspect class for purposes of an equal protection challenge), or how he was treated differently as a "class of one" from similarly situated persons. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Instead, the second amended complaint offers only generalized assertions that are inadequate to state a plausible claim. *Iqbal,* 556 U.S. at 678-79.

Accordingly, Plaintiff's equal protection claim must be dismissed for failure to state a claim upon which relief may be granted.

3. <u>Deliberate Indifference</u>

The Supreme Court has recognized that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs*., 489 U.S. 189, 196 (1989)); *see also Zimmermann v. Labish*, 189 F.4th 540, 548 (6th Cir. 2026) ("The default rule is that the Constitution does not 'impose[ ] upon the State' a blanket 'affirmative dut[y] of care and protection' to its citizens.") (quoting *DeShaney*, 489 U.S. at 198). Thus, "[i]t is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need." *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) (citing *DeShaney*, 489 U.S. at 196 (1989)). "The two applicable exceptions to

this general rule are (1) the custody exception and (2) the state-created danger exception." *Id.* (citing *DeShaney* 489 U.S. at 199–201).

For purposes of the Fourteenth Amendment, "in custody" requires an individual to be restrained "through incarceration, institutionalization, or other similar restraint." *DeShaney*, 489 U.S. at 200. This exception is interpreted to involve "at a minimum—actual, physical restraint." *Cutlip v. City of Toledo*, 488 F. App'x 107, 114 (6th Cir. 2012). "[T]he mere exercise of 'control over an environment is alone insufficient' to bring an individual within *DeShaney*'s custody exception." *Pierce v. Springfield Twp., Ohio*, 562 F. App'x 431, 437 (6th Cir. 2014) (quoting *Carver v. City of Cincinnati*, 474 F.3d 283, 286 (6th Cir. 2007)).

Plaintiff does not allege, nor do the facts suggest that Plaintiff was in the custody of the JPD or the JFPD at any time during the events described in the second amended complaint. *See, e.g.*, *Pierce*, 562 F. App'x at 437 (plaintiff was not in custody where he was not "handcuffed, arrested, restrained, or even touched by the police") (internal quotation marks and citation omitted); *Jackson*, 429 F.3d at 591 (gunshot victim was not in custody when he was placed into an ambulance where he died without being taken to a trauma center or given life support); *Willis v. Charter Twp. of Emmett*, 360 F. App'x 596, 600 (6th Cir. 2010) (unconscious motor vehicle accident victim was not in custody so as to trigger substantive due process duty on part of emergency responders to provide adequate medical care).

Likewise, the "state created danger" exception is inapplicable here. "A state is not subject to liability under *DeShaney*'s state-created danger exception unless it takes an 'affirmative action that exposed [the victim] to [a] danger to which [he] was not already exposed.'" *Pierce*, 562 F. App'x at 438 (first alteration added) (quoting *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir.1995)). This exception requires Plaintiff to plead that: "(1) the state actor

affirmatively acted to create or increase the risk of injury; (2) the victim, or a small class including the victim, was especially endangered; and (3) the state actor had the requisite degree of culpability," *i.e.*, acted with deliberate indifference. *Willis*, 360 F. App'x at 601; *Zimmermann*, 189 F.4th at 545.

The crux of Plaintiff's second amended complaint is that the First Responder Defendants failed to provide adequate emergency medical services following the May 5, 2023, motor vehicle accident during which he sustained a head injury, leading to a TBI diagnosis 29 months later. Courts in this Circuit have rejected similar claims. *See Goodrich v. City of Marion*, No. 3:23 CV 2201, 2026 WL 123780, at *4 (N.D. Ohio Jan. 16, 2026) ("[T]he Sixth Circuit has repeatedly found allegedly inadequate or incompetent medical treatment by first responders does not meet the first prong of a substantive due process violation based on a state-created danger theory.") (collecting cases). Specifically, while Plaintiff describes a series of omissions by Defendants, it is well-settled that a "failure to act is not an affirmative act under the state-created danger theory." *Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006) (citation omitted); *see also Wilson v. Gregory*, 3 F.4th 844, 858 (6th Cir. 2021) (holding that a government actor's failure to act does not satisfy the affirmative action requirement). Here, the First Responders' failure to render appropriate medical assistance, to transport Plaintiff to a hospital, and to accurately document his injuries are not affirmative acts for purposes of the state-created danger doctrine. S*ee, e.g.*, *Patterson ex rel. Est. of Turner v. City of Detroit*, No. 08-CV-10732, 2008 WL 4858440, at *5 (E.D. Mich. Nov. 10, 2008) (city's failure to send help when a 5-year-old called 911 twice to report that his mother had passed out was not actionable under the Fourteenth Amendment; the failure to act was not a state-created danger, and there was no government duty to render aid); *Sargi*, 70 F.3d at 912-

13 (taking seizure victim home without emergency medical intervention was not an affirmative act); *Willis,* 360 F. App'x at 601 (paramedics' failure to deliver aid was not an affirmative act).

Plaintiff therefore fails to state a cognizable due process claim based on deliberate indifference to his serious medical needs. Accordingly, this claim must be dismissed for failure to state a claim upon which relief may be granted.

4. Official-Capacity and *Monell* Liability

Plaintiff sues the First Responder Defendants in their official capacities. "[O]fficial-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs*., 436 U.S. 658, 691 n.55 (1978)). Therefore, Plaintiff's official-capacity claims against these seven Defendants are construed as brought against their employers, the City of Jeffersontown and the JFPD.[6]

As to the City of Jeffersontown and the JFPD, a municipality (or political subdivision) cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To state a claim against a municipality (or political subdivision), a plaintiff must "identify the policy, connect the policy to

[6] Plaintiff alleges that JFPD is "a Kentucky political subdivision organized under KRS Chapter 75." (DN 18, PageID.302). "Although a state and its instrumentalities are not "persons" under § 1983, its political subdivisions are." *Worcester v. Stark State Coll*., 806 F. App'x 460, 461 (6th Cir. 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)). The Court assumes for purposes of initial review only that the JFPD is a suable entity under § 1983. *See Russo v. Bedford Cnty. Sheriff's Dep't*, No. 4:14-CV-75-HSM-SKL, 2015 WL 5020999, at *3 (E.D. Tenn. Aug. 21, 2015) (assuming without finding that law enforcement task force was suable entity where plaintiff did not state actionable claims under § 1983 on preliminary review). The JPD, however, is not considered a "person" subject to suit under § 1983 because municipal departments are not suable under § 1983, and therefore the proper Defendant in this instance is the City of Jeffersontown. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint.") (citing *Smallwood v. Jefferson Cnty. Gov't*, 743 F.Supp. 502, 503 (W.D.Ky. 1990)).

the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

It is firmly established in the Sixth Circuit that "'[t]here can be no liability under *Monell* without an underlying constitutional violation.'" *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)); *Puskas v. Delaware Cnty., Ohio*, 56 F.4th 1088, 1099 (6th Cir. 2023) ("An underlying constitutional violation is the *sine qua non* of municipal liability, which requires that the constitutional violation was caused by a municipal policy or custom.") (citations omitted).

As explained above, the second amended complaint does not state viable due process and equal protection claims, and in the absence of any underlying constitutional violation, Plaintiff's *Monell* claims against the City of Jeffersontown and the JFPD must be dismissed for failure to state a claim upon which relief may be granted.

***B. ADA and Rehabilitation Act Claims***

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "The ADA and Rehabilitation Act are considered together as the statutes are interpreted similarly." *Outmemphis v. Lee*, No. 2:23-CV-2670-SHL-CGC, 2026 WL 881226, at *12 (W.D. Tenn. Mar. 31, 2026) (citations omitted).

Under either statute, Plaintiff must plausibly allege that: "(1) he has a qualifying disability, (2) he is otherwise qualified for a program, and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (citing *S.S.*, 532 F.3d at 453). Claims brought under the Rehabilitation Act further require the plaintiff to show "that the discrimination was 'solely' because of his disability." *Id.* (citing *Lewis v. Humboldt Acquisition Corp*., 681 F.3d 312, 317 (6th Cir. 2012) (en banc), and *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015)). A plaintiff may bring a claim of disability discrimination under two distinct theories: intentional discrimination and failure to reasonably accommodate. *Id.*

Plaintiff alleges that he was denied access to public emergency medical services on the basis of his disability, and that the JPD, JFPD, and/or City of Jeffersontown did not properly train their First Responders to accommodate cognitively impaired individuals. (DN 18, PageID.308, 310, 312). Plaintiff's disability discrimination claims are construed as being brought against the Jeffersontown Defendants because there is no individual liability under the ADA or the Rehabilitation Act. *See, e.g.*, *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (plaintiff could "not maintain an action under the ADA or the RA against the individual defendants identified in his complaint because neither the ADA nor the RA impose liability upon individuals."); *Sagan v. Sumner Cnty. Bd. of Educ*., 726 F. Supp. 2d 868, 875 (M.D. Tenn. 2010) (collecting cases holding that there is no individual liability under either statute).

1. <u>Intentional Discrimination</u>

To the extent Plaintiff claims he was denied emergency medical services or treatment on the basis of his disability under a theory of intentional discrimination, he does not plead any facts that could establish that the actions of the First Responders were based on or motivated by his

disability. *See Finley*, 102 F.4th at 823 (plaintiff must show that "his disability caused the defendant's discriminatory behavior—either the 'but-for cause' for ADA claims, or the sole reason for RA claims," and that "the defendant must act intentionally") (citations omitted); *see also Anderson*, 798 F.3d at 357 (intentional discrimination requires that the discrimination was directed toward the plaintiff in particular); *see also Roquemore v. Cuyahoga Metro. Hous. Auth*., No. 1:24 CV 01434, 2025 WL 1181268, at *11 (N.D. Ohio Apr. 23, 2025), *on reconsideration in part*, 2025 WL 2411189 (N.D. Ohio Aug. 20, 2025) (plaintiff did not plead that defendants "took any action against [him] because of his disability or that his disability was a significant factor in any decision they may have taken."). At most, the factual allegations suggest that the First Responders were aware of Plaintiff's head injury/cognitive impairment and failed to take appropriate action. This is insufficient to state a claim of intentional discrimination. *See Roquemore*, 2025 WL 1181268, at *11 ("Awareness of a disability without more is insufficient to state a claim under Title II of the ADA."); *Parker by Parker v. City of Highland Park*, 437 F. Supp. 3d 609, 621 (E.D. Mich. 2020) ("Parker has failed to plead any facts that could tend to establish that the Defendant officers used force against him because of his disability or that his disability was a significant factor in the officers' decision to use force. Parker pleads only that the Defendant officers were *aware* of his condition, not that his condition motivated the officers' conduct towards him."). Finally, Plaintiff's allegations focus on inadequate training, which cannot support a theory of intentional discrimination. *See Bowie v. Hamilton Cnty. Juv. Ct.*, No. 1:18-CV-395, 2019 WL 1305864, at *3 (S.D. Ohio Mar. 22, 2019) ("[C]laims under Title II of the ADA cannot be based on theories of recovery such as failure to train or failure to supervise, since these failures are necessarily not directed at a particular disabled individual."); *Kirchner v. Tennessee*, No. 3:14-CV-63-PLR-CCS, 2015 WL 13672464, at *2 (E.D. Tenn. June 4, 2015) ("Failure to train

employees about the ADA affects all disabled persons, not just the plaintiff. Accordingly, the plaintiff cannot demonstrate that the State Defendants discriminated against him specifically by failing to train the guards."). As such, any purported claims of intentional discrimination under the ADA and the Rehabilitation Act are subject to dismissal.

2. Failure to Accommodate

Plaintiff claims that the Jeffersontown Defendants failed to accommodate his cognitive disability in connection with the accident scene response and rendering emergency medical services. To state a failure-to-accommodate claim, Plaintiff must "plausibly allege that (1) he has a disability, (2) he is otherwise qualified, (3) he was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability." *Faris v. Ctrs. for Disease Control & Prevention*, No. 3:22-CV-23-BJB, 2026 WL 510428, at *3 (W.D. Ky. Feb. 24, 2026) (citing *Anderson*, 798 F.3d at 357). "He also must show that the defendant refused a reasonable accommodation after being put on notice of the disability. *Id.* (citing *Tchankpa v. Ascena Retail Grp.*, 951 F.3d 805, 812 (6th Cir. 2020)); *see also Larson v. Eppinger*, No. 2:20-CV-4997, 2021 WL 2659998, at *6 (S.D. Ohio June 29, 2021) ("[T]o state a claim for failure-to-accommodate under Title II, the plaintiff can allege facts to show that he was 'excluded from participation in, denied the benefits of, or subjected to discrimination because of' a disability due to the public entity's failure to make a 'reasonable modification' . . . .") (quoting 28 C.F.R. § 35.130(b)(7)(i)).

Charitably read, Plaintiff alleges that he was a qualified individual with a disability, the Jeffersontown Defendants are public entities within the meaning of the ADA and that they receive federal financial assistance rendering them subject to Section 504 of the Rehabilitation Act; the First Responders were on notice of Plaintiff's cognitive impairment and his need for medical

evaluation for his head injury; and that they failed to accommodate his disability in providing EMS and accident-response services.[7] Upon review, Plaintiff's failure-to-accommodate claims under Title II of the ADA and Section 504 of the Rehabilitation Act may proceed against the JPD, the JFPD, and the City of Jeffersontown.

## IV. ORDERS

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's ADA and Rehabilitation Act claims for failure to accommodate may proceed against Defendants JPD, JFPD, and City of Jeffersontown. In allowing these claims to continue, the Court expresses no opinion on their merits or ultimate outcome.

**IT IS FURTHER ORDERED** that all other claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

**The Clerk of Court** is **DIRECTED** to terminate Defendants John Doe 1, John Doe 2, John Doe 3, Terri'Ana Harris, Christopher Schumacher, JPD Officer Poston, JPD Officer Waters, JPD Officer 8278, JFPD John Doe #1, JFPD John Doe #2, Officer E. Wescott, and Bruce Wardrip as parties to this action.

[7] The Court notes that while the allegations in the second amended complaint call attention to the applicable statute of limitations, *see Phillips v. Ballard*, No. 5:17-cv-301-REW, 2019 WL 2359571, at *8 (E.D. Ky. June 4, 2019) ("Claims under Section 1983, the ADA, and the Rehabilitation Act are governed by a one-year statute of limitations."), they also suggest that statutory tolling provisions may apply in this case. *See* Ky. Rev. Stat. § 413.170(1) ("[I]f a person . . . was, at the time the cause of action accrued, an infant or of unsound mind, the action may be brought within the same number of years after the removal of the disability or death of the person."). Therefore, it is not clear from the face of the second amended complaint that Plaintiff's surviving claims are time-barred. *Cf. Pope v. Livingston Cnty.*, No. 26-11848, 2026 WL 2291630, at *2 (E.D. Mich. Aug. 7, 2026) (in reviewing a complaint under § 1915(e), a district court may *sua sponte* raise the statute of limitations defense when it is apparent from the face of the complaint) (citations omitted).

The Court will enter a separate Service and Referral Order to govern the development of the claims it has allowed to proceed.

Date: November 20, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.015